George **CONDAKES** et al., d/b/a Peter Condakes Company, Plaintiff,

v.

**SOUTHERN PACIFIC COMPANY,** Defendant.

**Civ. A. No. 67–748–F.**

United States District Court D. Massachusetts.

Nov. 5, 1968.

Frank Infelise, Jr., Infelise & Strout, Lynn, Mass., for plaintiff.

George B. Redding and Earl F. Nauss, Jr., Boston, Mass., for defendant.

## OPINION

FORD, District Judge.

Plaintiff brings this action under 49 U.S.C. § 20(11) to recover damages caused by the alleged late delivery of a carload shipment of peaches. The car was delivered to defendant as initial carrier at Sanger, California, on July 1, 1964 for delivery to plaintiff at the Boston Market Terminal. In accordance with plaintiff's instructions it was delivered to the New York Central Railroad in Chicago. It left Chicago on a New York Central train scheduled to arrive at the Beacon Park Yard in Boston at 11:30 p. m. on July 7. It arrived there at 12:05 a. m. on July 8. It was then taken to South Station where it was turned over to the New Haven Railroad at 1:35 a. m. On that morning the New Haven yards through which perishable shipments are handled were filled to their capacity of 200 cars. A total of 264 carloads of perishable commodities had to be handled that morning. The plaintiff's shipment had to be routed through another yard, and eventually was placed at the Boston Market Terminal at 8:45 a. m. Eastern Standard Time, on July 8.

Cars for the market of any particular day are normally placed at the Terminal by 5 a. m. or at the latest 6 a. m. Daylight Saving Time, on that day. This car was thus placed too late for the July 8 market. Plaintiff had a buyer who had agreed to buy the peaches subject to inspection on arrival. The buyer was present at the Terminal on July 8 ready to inspect, and waited until about 8 a. m. before going elsewhere to buy peaches. Plaintiff sold the peaches at the next day's market. He claims damages in the amount of $1640, the difference between the price received on July 9 and what he would have received if he had been able to sell the peaches on July 8.

In the absence of any special contract, the duty of a carrier is to transport any shipment with reasonable dispatch and to make delivery within a reasonable time. And in general special agreements with particular shippers not in accordance with published tariffs are discriminatory against other shippers and illegal. Chicago & Alton Railroad Company v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033. There was no special agreement here. The contract was contained in the bill of lading which provided as follows:

> "Sec. 2(a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch."

The schedule issued on July 1, 1961 by the New York Central System announcing speedier train service from the west did not, of course, guarantee arrival of all trains on schedule. It specifically stated, "Under this vastly improved schedule your cars handled via the New York Central will *generally* (emphasis supplied) be placed for unloading 2nd morning which will reduce the transit time up to 24 hours." Moreover, the New Haven on April 30, 1964 had given notice that after June 1, 1964 it would no longer undertake to place cars at the Boston Market Terminal in time for any particular market.

The evidence showed that in general cars from California to Boston arrive on the seventh day after shipment, although a substantial number arrive eight, nine, or sometimes ten days after shipment. The car involved here arrived on the seventh day. The delay occurred in moving the car from Beacon Park to the track at the Market Terminal. The delay was only a short one. Plaintiff puts his case most favorably by stating that it took 8 hours and 40 minutes to move the car three or four miles. However, what plaintiff contends was normal delivery would have taken 5 or 6 hours. The actual delay was only about 3 hours, and was due solely to the difficulty of

moving on that night a number of cars of perishable commodities larger than the normal capacity of the Boston yards.

The court finds that the carriers transported the car in question with reasonable dispatch, and that there was no unreasonable delay which would entitle plaintiff to recover in this case.

Judgment will be entered for defendant.